IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

HILVAS TRUST & NET CHARGE )
CORPORATION, Trustee, )
)
         Plaintiff, ) TC-MD 210028R
   v. )
)
MARION COUNTY ASSESSOR, )
)
         Defendant. ) **DECISION**

    Plaintiff appealed Defendant's notice of disqualification from forestland special

assessment, dated February 27, 2020, for the 2020-21 tax year.  A remote trial via Webex was

held on August 17, 2021.  Steve Anderson appeared on behalf of Plaintiff.  Chris Liu (Liu)

testified on behalf of Plaintiff.  Carl Cramer appeared on behalf of Defendant.  Michael White

(White) testified on behalf of Defendant.  Plaintiff's Exhibit 1 and Defendant's Exhibits A to E

were received into evidence without objection.

## I.  STATEMENT OF FACTS

    The subject property consists of tax lots 515088 and 330473 comprising 6.94 acres of

forested land in Gervais, Oregon.  Liu testified that he purchased the subject property in 1997

and applied for forestland special assessment several years later.  Liu deeded the subject property

to Plaintiff in October 2004.  The recorded deed contained the mailing address: 2459 SE Tualatin

Valley Hwy #227, Hillsboro OR 97123 (mailing address).  (Ex A at 2.)  Liu testified that he has

maintained that mailing address through the date of trial.  The mailing address is a UPS store

which Liu has contracted to forward his mail to his location in Singapore at the end of each

month.  Liu testified that he recalled that UPS did not forward his mail on one occasion because

the credit card he used for automatic payments had expired, however, that was before Defendant

mailed its disqualification notice. Liu engages a private Oregon consultant to maintain the subject property and keep it qualified for forestland special assessment. Liu testified he spend approximately $10,000 for the consultant and trees to initially get the property qualified for the program.

On February 27, 2020, Defendant mailed Plaintiff a letter, to the mailing address listed on the deed, notifying it that the subject property had been disqualified from forestland special assessment for failure to meeting stocking requirements. (Ex B.) The letter was returned by the U.S. Postal Service as "not deliverable as addressed unable to forward." (Ex B at 4.) Liu testified that he did not became aware of the disqualification until he received his 2020-21 property tax statements in late 2020. Liu testified that he contacted the county for information and immediately hired an expert to plant trees at a cost of $25,000 to $30,000. On April 13, 2021, Defendant approved Plaintiff's Application for Designation of Land as Forestland for the 2021-22 tax year. (Ex 6.)

White is the Rural Section supervisor for Marion County. He testified that the notice required for the county to remove the subject property from forestland special assessment was sent to the correct address of record, by first-class mail, and it was returned by the U.S. Postal Services as undeliverable. He further testified that the picture of the envelope Defendant submitted shows that the letter had slipped down below the envelope window partially obscuring the city, state and zip code, however, the address was correct. (*See* Ex B at 4.) White also testified that Defendant mailed a letter to Plaintiff before the disqualification notice warning Plaintiff of its intent to disqualify based on the property conditions, but it was also returned by the U.S. Postal Service as undeliverable. White testified that Defendant became aware that the subject property was noncompliant in 2020 and upon reviewing past arial imagery, he

determined that it first became noncompliant in 2016.

## II. ANALYSIS

The limited issue challenged by Plaintiff in this case is whether Defendant gave sufficient and proper notice to disqualify the subject property from forestland special assessment for the 2020-21 tax year.

A.      *Forestland Special Assessment*

The legislature established a program of special assessment for land that qualifies as "forestland" to achieve "a fair and equitable system of taxing the forest resources of this state." ORS 321.204.[1] The legislature found that "[t]he interests of this state, its residents and its future residents are best served by sustained yield practices and taxing policies that encourage production of forest resources for commerce, recreation and watersheds, stabilize employment levels, prevent large population shifts and encourage millage of timber products within Oregon." ORS 321.259(2). To qualify as designated forestland, the land must meet a number of regulatory requirements, including stocking and acreage requirements. *See* OAR 150–321–0340. Once land has been designated as forestland it remains as such until the assessor removes the designation. ORS 321.359(1)(a).

Under ORS 321.359(1)(a)(C), the assessor is required to remove the forestland designation if the assessor determines that the land is no longer forestland. When an assessor determines that land must be disqualified from forestland special assessment, the assessor must send notice of the disqualification to the taxpayer. ORS 308A.718(1)(c). The notice must include a statement of "the reason for the disqualification," the opportunity to seek special assessment under a different program, and the "imposition of any penalties" that would

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

result from the disqualification. *See* ORS 308A.718(1)–(5). If the assessor does not comply with ORS 308A.718, then the disqualification may be invalid. *See Smith v. Dept. of Rev.*, 17 OTR 357, 362 (2004); *Kaur v. Clackamas County Assessor*, TC-MD 160294N, WL 3895756 at *3 (Or Tax M Div, Sept 6, 2017).

B.      *Plaintiff's Contentions*

1.      *Defendant owed Plaintiff a duty to take additional steps when its disqualification notice was returned by the Postal Service.*

Plaintiff makes several arguments in support of its contention that Defendant's disqualification notice was defective. First, Plaintiff notes that it is undisputed that it never received Defendant's intent to disqualify letter about the conditions of the property nor the disqualification notice. Plaintiff contends that Defendant had a duty to take additional steps to inform Plaintiff about the disqualification after its notice was returned by the Postal Service. The court does not agree. ORS 803A.718(3) provides "[w]ithin 30 days after the date that land is disqualified from special assessment, the assessor shall notify the taxpayer in writing of the disqualification and shall state the reason for the disqualification." Here, neither party contends Defendant failed to mail to notice to Plaintiff within 30 days. The legislature could have required assessor to take additional actions to provide actual notice by including a provision within the statute but failed to do so. It would be improper of the court to add language to that effect to the statute. Defendant performed its statutory duty and was not required to ensure that Plaintiff received actual notice.

In *Adair v. Dept. of Rev.,* 17 OTR 311 (2004), the court dismissed an untimely appeal of an omitted property assessment. In that case, the county mailed effective notice, but it was returned as unclaimed due to the fact the taxpayer was away on vacation. *Id.* at 312. The court noted,

"The outcome here is dictated by statute. The county did all that the statutes required of it. The statutes created a gap into which some taxpayers or property may fall if mailings are properly made but not received. The burden of avoiding that result has been placed on taxpayer in the property tax system."

*Id.* at 313.

The facts and reasoning in the *Adair* case are very similar to those in the instant case. Here, Defendant mailed notice to the last-known address taken directly from Plaintiff's deed. The effective notice was properly delivered to the address listed on the deed but returned due to some error outside the purview of Defendant's responsibilities. The result is unfortunate but dictated by statute.

2. *Defendant has failed to meet its burden of proof.*

Plaintiff asserts that "[u]sually, the taxpayer has the burden of proof in property tax cases. In this particular instance, the defendant is required to show proof of the notice of the disqualification." (Ptf's post-trial memo at 1.) Plaintiff argues that Defendant's Exhibit B showing a copy of the envelope with the address partially obscured makes Defendant's evidence of mailing insufficient. However, "[i]n all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. Although the copy of the envelope provided by Defendant as evidence at trial was partially obscured, White's testimony about the mailing corroborated the address contained in the disqualification notice. The court is persuaded by a preponderance of the evidence that Defendant used Plaintiff's correct mailing address for its notice of disqualification.

3. *Public policy favors maintaining the property in special assessment.*

Finally, Plaintiff argues that the legislature's policy of encouraging maintenance of forestland would be undermined in light of the "over $60,000" Plaintiff expended to "stay in compliance." (*Id.*)

Liu's testimony demonstrated sincerity in his desire to maintain the property in forestland special assessment. And the court understands the seeming Sisyphean result of removing the subject property from special assessment, causing a one-time large tax burden, and then requalifying the property after Plaintiff spent large sums to restock trees. Yet, public policy does not remove a taxpayer's duty to maintain stocking requirements to keep a property in forestland special assessment. Plaintiff does not argue that the property was compliant with the program during the relevant tax year. Unfortunately, Plaintiff here is bound by the acts of their agent. Plaintiff's consultant failed for years to maintain the property in the required condition and maintain the stocking requirement. The burden is on the taxpayer and not counties to ensure compliance with the program.

## III. CONCLUSION

The court finds that Defendant mailed its notice of disqualification to the last known address of Plaintiff, and the notice was not defective. Defendant is not required to take additional steps with its notice when it is returned by the Postal Service or provide Plaintiff with actual notice of the disqualification. Policy considerations do not override statutory authority regarding disqualification from forestland special assessment. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this _____ day of January 2022.

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR. Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at https://www.courts.oregon.gov/courts/tax*

*This document was signed by Magistrate Richard Davis and entered on January 13, 2022.*